**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Gene BATTEST, Defendant and Appellant.**

**No. 12937.**

Supreme Court of South Dakota.

Submitted on Briefs May 21, 1980.

Decided Aug. 20, 1980.

---

Margaret Crew, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on the brief.

George J. Rice, Rice & Bowen, Aberdeen, for defendant and appellant.

HENDERSON, Justice.

## ACTION

This is a criminal action in which Gene Battest (appellant) was convicted of aggravated assault in violation of SDCL 22–18–1.1 and sentenced to four years in the state penitentiary. Battest appeals alleging errors listed and discussed below. We affirm.

## FACTS

On May 15, 1979, appellant returned to Aberdeen, South Dakota, from Minneapolis, Minnesota, pursuant to his occupation as a truck driver. Appellant picked up the victim, Barry Vossler, from the babysitter at approximately 8:00 p. m. on May 15, 1979. Barry and his mother, Brenda Vossler, both lived with appellant. Appellant testified that the babysitter told him Barry had fallen down some steps and was not acting normally. Shortly after 8:00 p. m., May 15, 1979, appellant and Barry arrived at the trailer home where he, Barry, and Brenda resided. Appellant and Barry, according to appellant, took a shower together and Barry played in the bathtub for awhile after appellant had finished showering. Appellant ran bathwater for Barry which appellant stated was lukewarm. Appellant testified that while he was dressing Barry he observed bruises on Barry's chest and legs.

According to appellant, he worked on his business books while the television was on and Barry played indoors on a jumping horse and tricycle until 9:45 p. m. Appellant testified that at that time he and Barry left the trailer and went to a service station in Aberdeen where appellant works on his truck. In attempting to back his truck into the service station's shop entrance, per appellant's testimony, appellant lost control of

the vehicle when a front tire went into a hole in the drive causing the steering wheel to be jolted from appellant's hands. Appellant maintains that Barry, who had been sitting on his lap, fell between the truck door and sill as he attempted to stop the vehicle. A woman who worked nearby drove Barry and appellant to a hospital. During the investigation of the incident, appellant originally told the police that Barry had fallen from the motor of the raised cab of the truck into a space between the motor and the left front wheel. Appellant's version of what transpired prior to the incident also contained other inconsistencies.

Barry was examined at the hospital on the morning of May 16, 1979, by Dr. Randolph W. Heisinger, a pediatrician with experience in the area of child abuse. At the time of the examination, Barry had bruises on his head, neck, shoulders, back, anterior chest, abdomen, thighs, testicles, penis, feet, and legs. There was also evidence of first-degree burns on both of Barry's legs extending from just below his knee to his feet. This type of burn is not uncommon when the skin is exposed to very hot water. Bleeding under the skin located within the ears was also indicated. Dr. Heisinger stated at trial that although twenty per cent of the bruises and injuries may have been more than 48 hours old, the majority of them were more recent. When asked if Barry's injuries could be the result of a fall of the kind Barry suffered, Dr. Heisinger replied in the negative. His answer was based upon the distribution and nature of the injuries. Appellant's ex-wife, Ann Battest, testified that one of the primary reasons for their divorce was that appellant had slapped her and their child in the face and head on six to ten separate occasions. Ann Battest further testified that appellant's short temper and desire for absolute quiet while he was watching television prompted the assaults. Barry was 33 months old at the time of trial. A jury found appellant guilty of aggravated assault on September 25, 1979, judgment was entered thereon from whence this appeal was taken.

## ISSUES

### I.

Were the injuries suffered by the child "serious bodily injury" as required by SDCL 22–18–1.1?

### II.

Was the evidence sufficient to support the guilty verdict?

### III.

Was it an abuse of discretion by the trial court to refuse appellant's interrogation of the jury as to any possible prejudice arising from a newspaper article published during the course of the trial?

## DECISION

### I.

SDCL 22–18–1.1 provides in pertinent part: "Any person who: . . . (4) Assaults another with intent to commit bodily injury which results in serious bodily injury; is guilty of aggravated assault." For a conviction of aggravated assault to occur, then, the accused's victim must have suffered serious bodily injury. Appellant contends the state failed to prove the injuries sustained by the victim caused serious bodily injury, thus, the motion for judgment of acquittal should have been granted by the trial court. We do not agree.

In *State v. Janisch*, 290 N.W.2d 473 (S.D. 1980), we stated that the term "serious" in SDCL 22–18–1.1(4) is subject to judicial definition and a jury's common sense cannot be relied upon to supply a proper meaning. Further, we held "that the term 'serious bodily injury' as referred to in the statute, SDCL 22–18–1.1(4), is such injury as is grave and not trivial, and gives rise to apprehension of danger to life, health or limb." *Id.* at 476.

A review of the victim's injuries indicates the severity of their extent. As was stated in the facts, bruises were present on virtually every area of the victim's body,

including his head, shoulders, back, chest, legs, and feet. In addition to the bruises on the head, bleeding under the skin located within the victim's ears was present. There was evidence of first-degree burns below the knee and extending to the feet on both legs. Such burns obviously did not arise from a fall. The victim's upper right arm was broken and a rib had also been fractured at least 48 hours prior to the time it was discovered, i. e., May 16, 1979.

Taken together, these injuries cannot be considered anything but a danger to life, health, and limb. The seriousness of these injuries is compounded by the fact that the victim was a very small child. The physical frailty of a child his age makes him more susceptible to harm and potential permanent damage than an adult or adolescent subjected to similar abuse. Injuries to the victim were of sufficient severity to reach the necessary status of serious bodily injury.

## II.

Appellant maintains that the evidence presented at trial is insufficient to support the verdict of guilty. This contention stems from the contradiction between appellant's explanation of the victim's injuries and the circumstantial evidence inconsistent with the explanation. Appellant testified that it was the fall from within the truck's cab which caused the injuries to the victim. Any injuries not attributed to the fall, due either to their age or type, appellant was unable to explain. A physician testifying for the prosecution indicated that the injuries sustained were not the kind that usually resulted from a fall and could have been the product of direct physical abuse. Photographs of the victim admitted at trial allowed the jury to view the injuries.

It is not a proper function of this Court to resolve evidentiary conflicts to determine the credibility of witnesses or weigh the evidence. *State v. Minkel*, 89 S.D. 144, 230 N.W.2d 233 (1975). The question on appeal in determining the sufficiency of evidence is whether there is evidence in the record which, if believed by the jury, is sufficient to sustain a finding of guilt. *State v. Shank*, 88 S.D. 645, 226 N.W.2d 384 (1975). This Court will review the evidence and inferences therefrom in a light most favorable to the trial verdict. *State v. Best*, 89 S.D. 220, 232 N.W.2d 447 (1975). Although the evidence against appellant is circumstantial, the rule is that a guilty verdict will not be set aside if the circumstantial evidence and reasonable inferences based thereon support a rational theory of guilt. *State v. Luna*, 264 N.W.2d 485 (S.D. 1978).

The testimonial and photographic evidence provided a foundation for the jury's inference that appellant was intentionally responsible for the victim's injuries. This inference was not unreasonable. It was up to the jury to determine the credibility of appellant. *State v. Anderberg*, 89 S.D. 75, 228 N.W.2d 631 (1975). The testimony of appellant did not convince the jury. Based on the evidence presented, the jury reasonably inferred that the victim's injuries were caused by appellant's abuse. The verdict was sufficiently supported by the evidence.

## III.

A popular syndicated column, written by Ann Landers, appeared in the local newspaper (The Aberdeen American News) during the course of the trial which sympathetically discussed the plight of abused children. Appellant's attorney requested, and was denied, permission to interrogate the jury to discover if the article had warped their objectivity so as to prevent them to render a fair and impartial verdict. Appellant now argues that this denial constituted prejudicial error. We do not agree.

The column in question dealt with the general topic of child abuse and not the specific case for which the jury was impaneled. Publicity of this type does not usually imbue jury members with undue bias. *State v. Marshall*, 264 N.W.2d 911 (S.D. 1978). Also, members of the jury were questioned during voir dire as to any possible prejudice or bias instilled in them due to

general media coverage of child abuse. There appeared to be no prejudice or bias in the jury panel regarding child abuse. The jury was chosen without any apparent difficulty. The trial court did not abuse its discretion by refusing to allow appellant's attorney to interrogate the jurors regarding the column.

Appellant's conviction is affirmed.

All the Justices concur.