**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Richard Lee ROBB, Defendant and Appellant.**

**No. 13162.**

Supreme Court of South Dakota.

Argued Jan. 8, 1981.

Decided March 18, 1981.

Steven R. Binger, Deputy State's Atty., Sioux Falls, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Parnell J. Donohue of Donohue & Donohue, Sioux Falls, for defendant and appellant.

HENDERSON, Justice.

## ACTION

This is an appeal by Richard Lee Robb (appellant) from a Minnehaha County jury verdict and final judgment finding him guilty of third-degree burglary. We affirm.

## FACTS

At approximately 2:45 a. m. on February 3, 1980, the burglar alarm was activated at the J. C. Penney Store (store) located at the Empire Shopping Mall (mall) in Sioux Falls, South Dakota. Upon arrival at the store, the police found that a door on the store's roof had been forcibly opened. No one was found inside the store and no merchandise was missing.

The police found several distinct fresh footprints in the snow on the roof of the mall. These footprints ended at the north side of the mall roof, where a gas pipe was vertically aligned with the north wall of the mall. At a point where the pipe meets the top of the mall roof, a small bag was found containing several hand tools. Footprints similar to the ones found on the mall roof were discovered by the police on the ground below the pipe and led around the corner of the building. The police followed these footprints for a few miles in a southerly direction but eventually lost the trail. A ladder, not the property of the mall, was also found on the south side of the mall roof.

Tire tracks were found on the ground directly below the area where the ladder

was recovered. These tracks headed south from the mall. One of the policemen on the scene noticed a 1963 Plymouth parked on the southern edge of the parking lot, facing the mall. The aforementioned tire tracks led towards this 1963 Plymouth. These tire tracks were similar to the tracks made by the 1963 Plymouth. An officer on the scene testified that, with his flashlight and cruiser's spotlight directed at the vehicle, he saw appellant's head peek up and momentarily look out the window. After the officers approached the vehicle, appellant stated to them that he had been sleeping. Appellant was then arrested. An arresting officer testified that appellant "didn't appear to be groggy or anything as though he had been sleeping." Appellant's 1963 Plymouth was the only vehicle located on the south side of the parking lot. It appears that the vehicle was backed away from the wall to its parked position with a view towards the mall.

Two policemen testified that there were footprints on the hood of appellant's vehicle which matched those on the mall roof; there were also scuff marks on the hood which were similar in dimension and appearance to the bottom of the ladder that was found. Some tools, a rope, and a pair of binoculars were found in appellant's vehicle.

Detective Dennis Beck of the Sioux Falls Police Department received a telephone call at approximately 6:30 a. m. on February 3, 1980, from an individual identifying himself as "Ed." At trial, Detective Beck stated that he recognized the caller as one Ed Branson, with whom he had spoken prior to this call. Appellant testified at trial that he and Branson were acquaintances. The caller asked whether appellant was at the police station because he had heard that appellant was in an auto accident; he also asked Detective Beck whether appellant was going to be able to bond out.

## ISSUES

### I.

Was there sufficient evidence presented at trial to legally support a rational theory of guilt? We hold that there was.

### II.

Did the trial court err by admitting Detective Beck's testimony due to (a) the method by which it was received and (b) its alleged violation of the hearsay rule? We hold that it did not.

## DECISION

### I.

Appellant's prime contention on appeal is that the evidence presented to the trial court was insufficient to sustain a verdict of guilty. The State's case was based entirely on circumstantial evidence. All elements of a crime, including intent, are provable by circumstantial evidence. *State v. Moeller*, 298 N.W.2d 93 (S.D.1980). In determining the sufficiency of evidence on appeal, the question is whether there is evidence in the record which, if believed by the jury, is sufficient to sustain a finding of guilt beyond a reasonable doubt. *State v. Moeller*, supra; *State v. Dietz*, 264 N.W.2d 509 (S.D.1978).

Appellant's testimony regarding the night of the burglary was as follows: Around 11:30 p. m. on February 2, 1980, he received a telephone call at his home in Burbank, South Dakota, (approximately fifty miles from Sioux Falls) from a girl he had recently met, requesting that he come to Sioux Falls and meet her at a bar. Appellant knew this girl only by her first name, and she was not present at trial. Due to vehicle trouble en route to Sioux Falls, appellant arrived too late (1:50 a. m.) for his rendezvous. He then had a drink at a bar located at the south side of the mall. After ten minutes he left the bar, moved his vehicle under a light at the southern edge of the mall parking lot, and went to sleep. Appellant testified that he wasn't cold because he was wearing a long, heavy coat and also had another coat and sweatshirt in the vehicle. Three policemen testified that the temperature that night was somewhere between 10° and 20° fahren-

heit. Appellant testified that he was later awakened by some policemen who were investigating the break-in of the store.

Appellant testified at trial that the imprints and scuff marks found on the hood of his vehicle were caused by standing on it when searching/hunting for foxes. He also testified that this is why he kept binoculars in his vehicle. According to appellant, tools and equipment found in his vehicle were used in connection with his employment as a construction worker.

At trial the State proffered the following theory as to how the burglary occurred: The ladder which was found by the police had been placed on the hood of appellant's vehicle and then leaned up against the south wall of the mall. This allowed appellant's accomplice to climb onto the mall roof and pull the ladder up behind him. Appellant then moved his vehicle to the southern part of the parking lot to act as a lookout. The unidentified accomplice then broke into the roof door of the store and activated the alarm system. Realizing the situation, the accomplice shinned down the pipe located on the north side of the mall and made his escape on foot into the night. In his haste, the accomplice abandoned his bag of tools on the mall roof. Appellant, unaware that his accomplice had activated the alarm system and fled, had no opportunity to escape and instead pretended to be asleep in his vehicle when the police arrived.

■ Appellant maintains that his presence in the mall parking lot does not sufficiently link him to the burglary. It is true that the mere presence of a person at the scene of a crime does not make him a participant; however, it is a circumstance which tends to support a finding that he is a participant and, with other facts and circumstances, can establish his guilt. *State v. Schafer*, 297 N.W.2d 473 (S.D.1980).

■ Aside from appellant's presence at the mall, several other factors indicated his involvement with the burglary: the scuff marks on his vehicle's hood which matched the dimensions of the bottom of the ladder; the matching footprints on the hood; the tire tracks which led from the area where the ladder was found toward appellant's vehicle; and the inquisitive, prompt telephone call to the police department a few hours after the early morning burglary by an individual requesting information and voicing concern regarding appellant. All of these circumstantial facts were presented to the jury at trial. The jury had the right to weigh these circumstances in its deliberations. The jury was not obliged to believe the saga of the sleepy fox hunter.

It is not necessary to exclude every possible hypothesis of innocence to support a conviction based on circumstantial evidence. *State v. Schafer*, supra; *State v. Scott*, 84 S.D. 511, 173 N.W.2d 287 (1969), *cert. denied*, 400 U.S. 821, 91 S.Ct. 39, 27 L.Ed.2d 49 (1970). Also, a verdict of guilty will not be set aside if the State's evidence, considering all favorable inferences drawn therefrom, supports a rational theory of guilt. *State v. Battest*, 295 N.W.2d 739 (S.D.1980); *State v. Dietz*, supra; *State v. Luna*, 264 N.W.2d 485 (S.D.1978). We hold that the evidence presented in this case adequately supports a rational theory of guilt.

## II.

■ Appellant also urges that the trial court erred by admitting the testimony of Detective Beck pertaining to his telephone conversation with someone he recognized as being Ed Branson, an acquaintance of appellant. (See *FACTS*, supra.) At trial, Branson was called as a witness by the State. He testified that he did not make a telephone call to Detective Beck, had never met Detective Beck, and did not know Detective Beck. The State subsequently called Detective Beck as a witness who testified, over appellant's objection, with regard to the substance of the telephone call in question. The trial court overruled appellant's objection based upon SDCL 19–14–8, which states: "The credibility of a witness may be attacked by any party, including the party calling him."

Specifically, appellant maintains that there did not exist sufficient foundation for Detective Beck's testimony to be admitted

into evidence. We do not agree. SDCL 19–17–1(5) provides:

> The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this section:
>
> . . . .
>
> (5) Identification of a voice, whether heard firsthand or through mechanical or electronic transmission or recording, by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker.

As we stated in *State v. Thibodeau*, 89 S.D. 404, 408, 233 N.W.2d 326, 329 (1975) (emphasis supplied), citing *People v. Goodman*, 159 Cal.App.2d 54, 323 P.2d 536 (1958):

> "When the identity of the party against whom a telephone conversation is sought to be admitted has been established by *some evidence*, either direct or circumstantial, the conversation may be shown in the same manner, and with like effect, as conversations had between individuals face to face."

Here, Detective Beck testified that he had talked to Ed Branson both before and after the call, and had also personally met with him. As previously mentioned, the caller identified himself as "Ed." We hold that there was sufficient foundation for the admittance of the testimony of Detective Beck.

■ Appellant also contends that the telephone conversation testimony of Detective Beck should not have been admitted because it constituted hearsay. This testimony, however, was not elicited to prove the truth of Branson's statements, SDCL 19–16–1(3), but rather to show that an acquaintance of appellant called the police station within a few hours of the burglary and inquired about appellant. We hold that this testimony was not hearsay in nature. Cf. *State v. Gage*, 302 N.W.2d 793 (S.D.1981).

We have reviewed the remaining issues raised and find them to be without merit.

The judgment of the trial court is affirmed.

All the Justices concur.