**STATE of South Dakota, Plaintiff and Appellant,**

v.

**Donald M. WILDE, Defendant and Appellee.**

**No. 13199.**

Supreme Court of South Dakota.

Argued Feb. 17, 1981.

Decided June 10, 1981.

Dennis R. Holmes, Asst. Atty. Gen., Pierre, for plaintiff and appellant; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Thomas L. Trimble of Sieler, Sieler, Trimble & Crawford, Rapid City, for defendant and appellee.

WOLLMAN, Chief Justice.

A jury found Donald M. Wilde (defendant) guilty of second-degree manslaughter. The State appeals from the order of the trial court granting defendant's motion for a new trial. We reverse and remand for the entry of judgment on the jury verdict.

Defendant was the driver of an automobile that went out of control and struck the corner of the Evans Plunge Building in the city of Hot Springs at approximately 1:30 a. m. on November 11, 1979. A passenger in defendant's automobile died as a result of injuries sustained in the accident. Defendant's vehicle left approximately 250 feet of tire marks prior to impact. Although there was some testimony at trial that there was sand or gravel on the black-top road surface, Trooper Van Orman of the South Dakota Highway Patrol testified that the surface was dry and in good condition.

Most of the testimony at trial dealt with the speed of defendant's vehicle immediately prior to the accident. Trooper Van Orman used measurements of the tire marks to determine the speed of defendant's vehicle prior to impact and concluded that the vehicle was traveling at least ninety-three miles per hour when it began to leave the tire marks. The posted speed limit is fifteen miles per hour. Defendant's expert witness testified that defendant's vehicle was traveling fifty-four miles per hour prior to the accident. He also testified that Trooper Van Orman's calculations were inconsistent. The testimony regarding the speed of defendant's vehicle at the point of impact varied from fifteen to forty miles per hour.

Defendant testified that he and the victim had left a bar in Hot Springs and were proceeding north on River Street when he saw a police vehicle in the area near the theater. The two officers in the police vehicle, the only one on patrol in Hot Springs that morning, arrived at the scene shortly after the accident occurred. Defendant testified that he was going twenty to twenty-five miles per hour when he saw the police vehicle but shortly thereafter began to accelerate and was going approximately forty or fifty miles per hour when he lost control of the automobile.

Defendant's motion for new trial was based upon the prosecution's disclosures subsequent to trial that the police officers had advised the prosecutor prior to trial that they had observed defendant's vehicle shortly before the accident.[1] Although the trial court had entered an order for discovery requiring the prosecution to make available, among other things, any and all exculpatory information, defense counsel was not informed prior to trial that the police officers recalled seeing defendant's vehicle prior to the accident. Defendant had, however, informed his counsel at least two days prior to trial that he had met the police car shortly before the accident. Defense counsel made no attempt to interview the police officers concerning this information, notwithstanding the fact that the

1. Apparently the officers had observed defendant's vehicle at about the same point that defendant had seen them. The record does not reflect the distance between this point and the scene of the accident, but estimates of counsel range from six to twelve blocks.

State had made no attempt to in any way restrict defendant's access to the officers. Moreover, defense counsel neither specifically cross-examined the officers regarding this matter nor moved for a continuance for the purpose of conducting further investigation.

■■■ Suppression by the prosecution of evidence favorable to an accused violates due process where the evidence has been requested by the accused and is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecutor. *Brady v. State of Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *State v. Parker*, 263 N.W.2d 679 (S.D.1978). Generally, in order to come within the *Brady* rule, the defendant must make a timely request for the withheld evidence, the evidence must be in the State's possession (physical evidence) or known to the State (testimony of a witness), and the withheld evidence must be material and exculpatory. *State v. Hanson*, 278 N.W.2d 198 (S.D.1979). See also *State v. Parker*, supra.[2]

■■■ These requirements presuppose, however, that the particular evidence in question is unknown to the defendant or is of such character that it would remain unknown to the defendant after a reasonably diligent effort to discover the evidence. As stated by the United States Court of Appeals for the Second Circuit:

> The purpose of the *Brady* rule is not to provide a defendant with a complete disclosure of all evidence in the government's file which might conceivably assist him in preparation of his defense, but to assure that he will not be denied access to exculpatory evidence known to the government but unknown to him.

*United States v. Ruggiero*, 472 F.2d 599, 604 (2nd Cir. 1973). See *United States v. Cravero*, 545 F.2d 406, 420 (5th Cir. 1976). If a defendant knows or should know of the allegedly exculpatory evidence, it cannot be said that the evidence has been suppressed by the prosecution. *United States v. Brown*, 628 F.2d 471 (5th Cir. 1980). The *Brady* rule does not abrogate a defendant's responsibility to discover and develop his defense.

■■ We conclude that defendant had notice of the essential facts that would have enabled him to take advantage of the allegedly exculpatory evidence. *United States v. Brown*, supra; *United States v. Stewart*, 513 F.2d 957 (2nd Cir. 1975); *Williams v. United States*, 503 F.2d 995 (2nd Cir. 1974); *United States v. Ruggiero*, supra; *United States v. Akin*, 464 F.2d 7 (8th Cir. 1972); *State v. Sarinske*, 91 Wis.2d 14, 280 N.W.2d 725 (1979). Accordingly, we conclude that there was no prosecutorial suppression of evidence within the meaning of the *Brady* rule and hold that the trial court abused its discretion in granting defendant's motion for a new trial. *State v. Furlow*, 87 S.D. 634, 213 N.W.2d 705 (1973).[3]

The order of the trial court is reversed, and the case is remanded for entry of judgment on the jury verdict.

All the Justices concur.

---

**2.** Nevertheless, "if the evidence is so clearly supportive of a claim of innocence that it gives the prosecution notice of a duty to produce, that duty should equally arise even if no request is made." *United States v. Agurs*, 427 U.S. 97, 107, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342, 351 (1976). See *State v. Hanson*, supra.

**3.** In view of our holding that there was no prosecutorial suppression of evidence as con-

templated by *Brady*, we need not address the issue whether, under the rule set forth in *United States v. Agurs*, supra, the omitted evidence creates a reasonable doubt of guilt that did not otherwise exist. Moreover, nothing we have said in this opinion should be construed as in any way suggesting that the State need not fully comply with discovery orders.